IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-660-F

MARK T. STEPHENS and WENDY S. ELLIOTT f/k/a WENDY S. STEPHENS,

Plaintiff,

vs.

BANK OF AMERICA HOME LOANS, INC. (formerly COUNTRYWIDE HOME LOANS, INC.), BANK OF NEW YORK MELLON AS TRUSTEE, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., BSI FINANCIAL SERVICES and HUTCHENS LAW FIRM,

Defendants.

**ORDER**

This matter is before the court on the motions to dismiss filed by Bank of America, N.A. ("BANA"), Countrywide Home Loans, Inc. ("Countrywide"), Bank of New York Mellon f/k/a the Bank of New York, as successor trustee to JP Mortgage Chase Bank, N.A., as trustee on behalf of the certificate holders of the CWHEQ Inc., CWHEQ Revolving Home Equity Loan Trust, Series 2006-E ("BNY"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "the BANA Defendants"),[1] Hutchens Law Firm ("Hutchens") and BSI Financial Services, Inc. ("BSI") (collectively, "Defendants") pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. [DEs 16, 25, 28]. Plaintiffs, *pro se*, responded. [DEs 24, 32-33]. Defendants did not reply. For the reasons stated below, Defendants' motions are

---

[1] The BANA Defendants assume Plaintiff intended to name Countrywide Home Loans, Inc. and Bank of America, N.A. – a separate entity from Countrywide – as defendants. Accordingly, both entities respond on behalf of "Bank of America Home Loans, Inc. (formerly Countrywide Home Loans, Inc.)." *See* BANA Mot. 1 n.1 [DE 16].

allowed in part and denied in part.

## I. BACKGROUND[2]

This matter concerns alleged federal and state law violations associated with two mortgage loans – the first consummated in 2005 and the second in 2006 – both of which were secured by a deed of trust on 998 West Durness Court, Wake Forest, North Carolina ("the property"). Compl. ¶ 2.

On August 10, 2005, Ms. Elliot executed a promissory note evidencing a loan ("the priority loan") in the amount of $154,800.00 for the benefit of Countrywide Bank, a Division of Treasury Bank, N.A., which was secured by a deed of trust on the property listing MERS as nominee for the lender and the lender's successors and assigns and recorded in the Wake County

---

2 Despite the length of the complaint (29 pages), many of the allegations therein are conclusory with little meaningful factual content and do not constitute factual allegations against any defendant. In fact, Plaintiffs' complaint is comprised predominantly of allegations describing debt securitization practices generally and conclusory allegations regarding (1) Countrywide's improper mortgage origination practices and lax underwriting standards; (2) the wrongful or void assignments of deeds of trusts and notes for Plaintiffs' mortgage loans and (3) Defendants' deceptive securitization practices. *See, e.g.*, Compl. ¶¶ 11-26, 28-72.

In reviewing a Rule 12(b)(6) motion, courts "may properly take judicial notice of matters of public record," and "may also consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic" without converting it into a motion for summary judgment. *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *accord Feldman v. Law Enf't Assocs. Corp.*, 779 F. Supp. 2d 472, 486 n.8 (E.D.N.C. 2011) (noting a court may consider on a Rule 12(b)(6) motion "documents appearing in the record of the case, matters of public record, items subject to judicial notice, matters incorporated by reference into the complaint, and exhibits attached to the complaint whose authenticity is unquestioned") (citing 5B Wright & Miller, Federal Practice & Procedure § 1357). Matters of public record, in this context, have been understood to include "copies of pleadings and other materials filed in other courts." *Caldwell Trucking PRP Group v. Spaulding Composites Co.*, 890 F. Supp. 1247, 1252 (D.N.J. 1995). Exhibits that may be incorporated within the pleadings under Rule 10(c) include documents such as affidavits, letters, contracts and loan documentation. *See Eagle Nation, Inc. v. Market Force, Inc.*, 180 F. Supp. 2d 752, 754 (E.D.N.C. 2001).

Accordingly, the court derived the majority of the facts controlling its analysis from recorded documents contained in the Wake County Register of Deeds, promissory notes and a foreclosure-related notice to Plaintiffs from Hutchens – some or all of which were attached as exhibits to the instant motions. No facts, however, are derived from the following exhibits attached to the complaint: (1) a Property Securitization Analysis Report prepared by Certified Forensic Loan Auditors, LLC ("CFLA"), (2) an Affidavit of Facts by Michael Carrigan, a certified mortgage securitization auditor with CFLA and (3) a HELOC Securitization Audit prepared by Securitization Audit Pro, LLC. While the complaint does not reference these documents, it is evident Plaintiffs rely on these materials for the erroneous proposition that a separation of the note from the deed of trust renders the deed of trust void. *See* § IV *supra*.

Registry. BSI Mem., Ex. A [DE 29-2], Ex. B [DE 29-3 at 2-3].

Plaintiffs' priority deed of trust subsequently underwent two assignments. In particular, MERS assigned it to Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP, which in turn assigned it to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust as Trustee for Ventures Trust 2013-I-H-R ("original trustee"). *Id.*, Ex. C [DE 29-4], Ex. D [DE 29-5].

On March 10, 2006, Plaintiffs executed a home equity line of credit ("HELOC") promissory note in the amount of $20,423.00 for the benefit of Countrywide secured by a deed of trust on the property, listing MERS as nominee for the lender and the lender's successors and assigns and recorded in the Wake County Registry. *Id.*, Ex. E [DE 29-6 at 4], Ex. F [DE 29-7]. In September 2015, MERS assigned the HELOC deed of trust to BNY. BANA Mem., Ex. E [DE 17-5].

On an unspecified date, Plaintiffs defaulted on their priority loan. Subsequently, Hutchens, on behalf of BSI, sent Ms. Elliot a pre-foreclosure notice dated April 20, 2016. Hutchens' Mem., Ex. G [DE 29-8]. At the time, the total amount past due on the priority loan was $12,264.20.[3] *Id.* The pre-foreclosure notice advised Ms. Elliot of the required process in order to cure her default and avoid foreclosure.[4] *Id.*

On July 7, 2016, Plaintiffs filed the instant action against Defendants asserting federal claims under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639 *et seq.*, a 1994 amendment to TILA

---

[3] The complaint is silent as to the status of the HELOC.

[4] Thereafter, BSI, on behalf of the original trustee, appointed a substitute trustee. On August 8, 2016, BSA recorded notice of the appointment of the substitute trustee in the Wake County Register of Deeds. Hutchens' Mem., Ex. H [DE 29-9]. According to BSI and Hutchens, a foreclosure proceeding was initiated against Plaintiffs in Wake County Superior Court on August 17, 2016. *See* Hutchens' Mem. at 4 [DE 26].

and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, as well as state law claims for wrongful foreclosure, fraud in the concealment, fraud in the inducement, intentional infliction of emotional distress ("IIED") and quiet title.[5]

## II. STANDARD OF REVIEW[6]

To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In evaluating a 12(b)(6) motion, a court accepts all well-pled facts in the complaint as true and construes those facts in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008). Legal conclusions, recitations of the elements of a cause of action, and bare assertions devoid of further factual enhancement do not constitute well-pled facts for Rule 12(b)(6) purposes. *See Iqbal*, 556 U.S. at 678.

The standard for evaluating the sufficiency of the pleading in the instant case is particularly flexible because "a document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal citation

---

5 Plaintiffs erroneously identify the remedies of declaratory relief and rescission as causes of action. Compl. at 20, 24.

6 Because the court decides the motions pursuant to Rule 12(b)(6), it forgoes discussion of the Rule 12(b)(1) legal standard.

omitted). Notwithstanding the court's obligation to liberally construe a *pro se* plaintiff's allegations, however, the court cannot ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such *pro se* complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.").

Here, Defendants seek dismissal of Plaintiffs' federal claims based in part on limitations grounds – an affirmative defense that a party typically must raise in a pleading under Fed. R. Civ. P. 8(c). An affirmative defense is not usually an appropriate basis for dismissal. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, an affirmative defense may be reached through a Rule 12(b)(6) motion as long as "all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Id.*; *see, e.g.*, *Rice v. PNC Bank, N.A.*, No. PJM 10-07, 2010 U.S. Dist. LEXIS 40424 (D.Md. Apr. 26, 2010) (granting a motion to dismiss TILA claim as untimely). If the complaint does not clearly reveal the existence of a meritorious affirmative defense, it is inappropriate for the court to consider it under a Rule 12(b)(6) motion. *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).

## III. FEDERAL CLAIMS

Plaintiffs allege violations of and purport to assert various rights under TILA, HOEPA and RESPA. Defendants provide no substantive briefing as to these claims, arguing only that they are time-barred by the relevant statutes of limitations.

### A. Violations of TILA and HOEPA (Counts Seven and Nine)

Plaintiffs allege that Defendants violated TILA and HOEPA by failing to (1) provide "material disclosures," (2) "tak[e] into account the intent of the State Legislature in approving

[TILA] which was to inform home buyers of the pros and cons of adjustable rate mortgages," and (3) advise Plaintiffs "to compare similar loan products with other lenders." Compl. ¶ 123. Plaintiff seeks both damages and rescission remedies.

TILA governs the terms and conditions of consumer credit by, *inter alia*, requiring lenders to disclose certain details about loans and loan fees and costs. 15 U.S.C. § 1601 *et seq.* TILA "was subsequently amended by HOEPA, which requires lenders to make additional disclosures to borrowers of 'high-cost' or 'high-rate' loans." *Cunningham v. Nationscredit Fin. Servs. Corp.*, 497 F.3d 714 (7th Cir. 2007) The Board of Governors of the Federal Reserve System issued Regulation Z to implement the mandates and directives of TILA, as amended by HOEPA.[7] 12 C.F.R. § 226.1(a).

1. Liability under TILA

In reviewing the sufficiency of Plaintiffs' TILA claims, the court first considers whether Defendants are subject to TILA's requirements. Liability for violations of TILA rests only with "creditors" and their "assignees." *See Harris v. Option One Mortg. Corp.*, 261 F.R.D. 98, 105 (D.S.C. 2009); 15 U.S.C. § 1635; 15 U.S.C. § 1640; 15 U.S.C. § 1641. Under TILA, a "creditor" is defined as someone who both "(1) regularly extends . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required;" and "(2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(f); *see also Cetto v. LaSalle Bank Nat'l Ass'n*, 518 F.3d 263, 269-72 (4th Cir. 2008). Regulation Z also defines a "creditor" as "[a] person who regularly extends consumer credit . . . , and to whom the obligation is initially

7 As "HOEPA is just an amendment to TILA itself," references to Plaintiffs' TILA claim include the HOEPA claim unless otherwise stated. *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1176 n.3 (10th Cir. 2012).

payable, either on the face of the note or contract, or by agreement when there is no note or contract." 12 C.F.R. § 226.2(a)(17)(i) (footnote omitted).

In this case, there are no allegations in the complaint that give rise to the plausible inference that Hutchens, BSI or MERS are "creditors" within the meaning of TILA or Regulation Z. Nor are there factual allegations suggesting these defendants are or were an assignee of the loan.[8] Indeed, numerous courts have found that MERS is neither a creditor nor assignee under TILA and this court agrees. *See Slimm v. Bank of Am. Corp.*, No. 12-5846 (NLH/JS), 2013 U.S. Dist. LEXIS 62849, at *53 (D.N.J. May 2, 2013) (collecting cases). Without any factual allegations suggesting that these defendants are creditors or assignees within the meaning of TILA, any claims under TILA against Hutchens, BSI and MERS must be dismissed.

Plaintiffs' complaint is also silent as to the liability status of BANA, Countrywide and BNY. Based on the exhibits attached to the instant motions and Defendants' failure to address this issue, however, the court assumes, *arguendo*, that Countrywide is a "creditor" and that BANA and BNY are "assignees." Accordingly, the court next considers whether Plaintiffs state a TILA claim as to these defendants.

2. TILA Disclosure Requirements

TILA "has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980) (quoting U.S.C. § 1601(a)). Accordingly, creditors are required "to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed.*

---

8 To the extent Plaintiffs challenge the assignments of the two deeds of trust, Plaintiffs lack standing as they were not parties to assignment. *See Ward v. Sec. Atl. Mortg. Elec. Registration Sys.*, 858 F. Supp. 2d 561, 568 (E.D.N.C. 2012).

*Bank*, 523 U.S. 410, 412 (1998); *see generally* 15 U.S.C. §§ 1601-1667f. Furthermore, TILA, as amended by HOEPA, requires creditors making "high-cost" or "high-rate" loans to provide additional disclosures to certain borrowers, as it creates a special class of regulated loans that are made at higher interest rates or with excessive costs and fees. 15 U.S.C. §§ 1631-32, 1639.[9] Specifically, HOEPA protections apply if a loan meets one of two high-cost loan triggers: (1) the annual percentage rate exceeds by more than eight percentage points for first-lien loans (or by more than 10 percentage points for subordinate-lien loans) the yield on Treasury securities of comparable maturity; or (2) the total points and fees exceed the greater of 8 percent of the total loan amount, or $400 (adjusted for inflation). 15 U.S.C. § 1602(bb)(1), (3); 12 C.F.R. § 226.32(a)(1)(i), (ii).

Here, Plaintiffs fail to allege facts which render plausible the conclusion that BANA, Countrywide or BNY failed to make TILA-mandated disclosures. Nor have Plaintiffs alleged any facts demonstrating either mortgage loan is governed by HOEPA.

3. Application of the Doctrine of Equitable Tolling

Even if Plaintiffs alleged sufficient facts giving rise to monetary damages and rescission under TILA against BANA, Countrywide or BNY, Plaintiffs must overcome the statute of limitations hurdles for such claims. In recognition of this fact, Plaintiffs argue that equitable tolling applies based on the doctrine of fraudulent concealment – an argument ignored by Defendants.[10] Compl. ¶ 124.

---

9 The Federal Reserve Board is charged with administering TILA, and has adopted Regulation Z to implement TILA's mandates and directives. *See* 12 C.F.R. § 226.1.

10 In their complaint, Plaintiffs avail themselves of this doctrine as to the TILA and HOEPA claims only. In their responses to Defendants' respective motions, however, Plaintiffs raise the possibility of equitable tolling as to all federal claims. *See* [DE 24 at 3, DE 32 at 5, DE 33 at 5].

Plaintiffs also seek relief from the statute of limitations by invoking the discovery rule. In general, the

a. *TILA Claim for Damages*

Here, Plaintiffs consummated the first and second loan transactions on August 10, 2005 and March 10, 2006, respectively. Plaintiffs, however, did not file this lawsuit until July 7, 2016. TILA provides for a one year statute of limitations for damages claims.[11] Specifically, such a claim must be filed within one year of the occurrence of the violation; otherwise, the claim is time barred unless the doctrine of equitable tolling applies. 15 U.S.C. § 1640(e).

"Equitable tolling" is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances. Though there is no controlling circuit precedent regarding whether an action for monetary damages under TILA is subject to the doctrine of equitable tolling when a plaintiff alleges fraudulent concealment, other federal courts have held that the statute of limitations period in TILA is subject to equitable tolling. *See, e.g.*, *Ellis v. GMAC*, 160 F.3d 703, 708 (11th Cir. 1998); *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 501-03 (3d Cir. 1998) (also holding the statute of limitations period in RESPA is subject to equitable tolling); *Jones v. TransOhio Savings Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984). This holding is consistent with the well-established principle of law that the doctrine of equitable tolling is "read into every federal

---

limitations period for a federal cause of action begins upon discovery of the injury (i.e., the discovery rule). *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995). The discovery rule, however, "is a general rule of construction that is inapplicable when a statute requires a different time in 'clear and unambiguous' language." *Mullinax v. Radian Guar.*, 199 F. Supp. 2d 311, 324 (M.D.N.C. 2002) (quoting *Hamilton v. 1st Source Bank*, 928 F.2d 86, 88 (4th Cir. 1990)). As stated by the Fourth Circuit, "when Congress has intended a discovery rule, it has proven capable of writing one." *Rowe v. Aurora Commer. Corp.*, No. 5:13-21369, 2014 U.S. Dist. LEXIS 105186, at 25 (S.D. W. Va. Aug. 1, 2014) (quoting *Hamilton*, 928 F.2d at 88); *see Polkampally v. Countrywide Home Loans Inc.*, 2013 U.S. Dist. LEXIS 158672, at *20 (D.N.J. Nov. 6, 2013) (noting "[c]ourts have rejected the idea that a discovery rule applies to a TILA violation"). TILA, however, provides a "clear and unambiguous" limitations period, foreclosing the application of the discovery rule to this matter. *Hamilton*, 928 F.2d at 87.

11 "This same one-year statute of limitations applies to violations of Regulation Z." *Rice*, 2010 U.S. Dist. LEXIS 40424, at *6 (citing 12 C.F.R. § 226.1(e)).

statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). As the Third Circuit Court of Appeals explained, "TILA is a remedial statute and should be construed liberally in favor of the consumer." *Ramadan*, 156 F.3d at 502. Accordingly, the court finds that equitable tolling applies to claims for monetary damages under TILA, as amended by HOEPA. *See Rice*, 2010 U.S. Dist. LEXIS 40424, at *8 (holding the doctrine of fraudulent concealment can toll the statute of limitations established in 15 U.S.C. § 1640(e) for monetary damages claims under TILA).

Pursuant to the fraudulent concealment tolling doctrine, "when the fraud has been concealed or is of such a character as to conceal itself, and the plaintiff is not negligent or guilty of laches, the limitations period does not begin to run until the plaintiff discovers the fraud." *Supermarket of Marlinton v. Meadow Gold Dairies*, 71 F.3d 119, 122 (4th Cir. 1995) (applying the doctrine in an antitrust suit); *accord Luther v. Wells Fargo Bank*, No.: 4:11-CV-57, 2012 U.S. Dist. LEXIS 142538, at *15 (W.D. Va. Aug. 6, 2012). Accordingly, to invoke this doctrine as a basis for equitable tolling, a plaintiff must allege "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Id.*

In short, Plaintiffs can show equitable tolling of the statute of limitations if BANA, Countrywide or BNY fraudulently concealed facts that prevented them from filing suit within the limitation period. That is, Plaintiffs must allege sufficient facts indicating they have "been induced or tricked by [their] adversary's misconduct into allowing the filing deadline to pass." *Chao v. Va. DOT*, 291 F.3d 276, 283 (4th Cir. 2002) (alteration added) (quoting *Irwin v. Dept. of Veterans*, 498 U.S. 89, 96 (1990)). Here, Plaintiffs allege no facts suggesting BANA,

Countrywide or BNY concealed facts preventing them from filing this suit before expiration of the one-year statute of limitations.

In certain instances, "the TILA violation itself may serve as the concealment that triggers equitable tolling." *Barnes v. West, Inc.*, 243 F. Supp. 2d 559, 564 (E.D. Va. 2003). Material disclosures required by TILA "means the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosures and limitations referred to in [C.F.R.] §§ 226.32(c) and (d) and 226.35(b)(2)." 12 C.F.R. § 226.23. Plaintiffs allege only that BANA, Countrywide and BNY failed to "effectively provide the required disclosures and notices." "[M]erely intoning the word 'fraudulently' in a complaint [as Plaintiffs do here] is not sufficient to raise the defense" of equitable tolling. *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974). As the Fourth Circuit explained,

> a plaintiff seeking to escape the statute [of limitations] . . . shall make distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been before made.

*Id.* at 555. Plaintiffs allege no facts demonstrating entitlement to equitable tolling.

b. *TILA Claim for Rescission*

Under TILA, borrowers ordinarily have three days from the date of closing in which they may rescind the transaction in its entirety. 15 U.S.C. § 1635(a). However, "[i]f the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first." 12 C.F.R. § 226.23(a)(3); 15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever comes first.").

Here, the time limit for exercise of a right of rescission has long passed. That limitations period, moreover, is not subject to equitable tolling because "§ 1635(f) is a statute of repose and not a statute of limitation." *Jones v. Saxon Mortg.*, 537 F.3d 320, 326 (4th Cir. 1998); *see Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (holding "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period"). Accordingly, Plaintiffs' TILA claim for rescission is dismissed with prejudice, as amendment could not cure this deficiency.

**C. RESPA (Count Nine)**

The Real Estate Settlement Procedures Act was enacted to enable consumers to better understand the home purchase and settlement process and, where possible, to bring about a reduction in settlement costs. 12 U.S.C. § 2601. RESPA regulates the services lenders provide "in connection with a real estate settlement," which covers things such as title searches, title insurance, document preparation, the origination of a federally related mortgage loan, the handling of the closing or settlement, and other services. *Freeman v. Quicken Loans, Inc.*, __ U.S. __, 132 S. Ct. 2034, 2038 (2012) (quoting 12 U.S.C. § 2601). For example, it requires the disclosure of certain forms, including the settlement statement, to the borrower "at or before the settlement by the person conducting the settlement." 12 U.S.C. § 2603. It also requires lenders to provide a good faith estimate of charges for certain settlement services in advance of closing. 12 U.S.C. § 2604(c). RESPA also prescribes certain actions to be followed by entities or persons responsible for servicing federally related mortgage loans, including providing borrowers written notice of an assignment or transfer of the loan. *Id.* § 2605(b). RESPA prohibits, among other things, the charging of unearned fees for settlement services, the collection of excess escrow monies, inaccurate escrow account reporting and the imposition of fees for statements required by RESPA and TILA. 12 U.S.C. §§ 2607, 2609, 2610. RESPA's implementing regulations,

known as "Regulation X," are codified at 12 C.F.R. §§ 1024.1-1024.41.

Here, Plaintiffs have not alleged whether the defendants are even subject to liability under RESPA. Moreover, the complaint falls woefully short in making the necessary allegations to state a RESPA claim. In particular, Plaintiffs proffer the following conclusory, vague and facially insufficient allegations in support thereof: (1) "Defendants' failure to disclose that they will gain a financial benefit while Plaintiff[s] suffer financially;" (2) "no separate fee agreements . . . [d]isclosures of additional income due to interest rate increases or the proper form and procedure in relation to the Borrower's Rights to Cancel were provided;" (3) "the payments between the Defendant were misleading and designed to create a windfall." Compl. ¶¶ 134-136.

Finally, even if Plaintiffs alleged sufficient facts to state a claim under RESPA, the claim is time barred[12] unless the doctrine of equitable tolling applies. As discussed *supra*, Plaintiffs' complaint is devoid of any facts demonstrating entitlement to equitable tolling.

## IV. DISCUSSION – STATE LAW CLAIMS

Plaintiffs' state law claims – "lack of standing/wrongful foreclosure," fraud, intentional infliction of emotional distress and quiet title – are all associated with the state foreclosure proceeding.

Before addressing each claim, the court notes that the state law claims are based on two erroneous premises. First, Plaintiffs argue that the separation of the promissory notes from their respective deeds of trust made any subsequent transfers of the notes or deeds of trust void under

---

[12] Claims under RESPA are subject to a limitations period of either one year or three years "from the date of the occurrence of the violation," depending on the type of violation. 12 U.S.C. § 2614. Thus, like TILA, RESPA provides a "clear and unambiguous" limitations period. *Hamilton*, 928 F.2d at 87. Accordingly, the discovery rule is inapplicable to RESPA. *See Mullinax v. Radian Guar.*, 199 F. Supp. 2d 311, 324 (M.D.N.C. 2002) (holding the discovery rule inapplicable to RESPA).

North Carolina law. "This 'split the note' or 'separation of note' theory of mortgage law has been consistently rejected by courts [that] have considered its merit." *Joy v. Merscorp, Inc.*, 5:10-CV-218-FL, 2012 U.S. Dist. LEXIS 187282, at *45 n.24 (E.D.N.C. May 15, 2012) (collecting cases), adopted in relevant part, 935 F. Supp. 2d 848, 859-60 (E.D.N.C. 2013); *accord Steele v. Capital One Home Loans, LLC*, No. 3:13-CV-704-RJC-DSC, 2014 U.S. Dist. LEXIS 104142, at *8 (W.D.N.C. July 30, 2014) (stating "courts have rejected [the] theory that because the Note and the Deed of Trust have been separated in the securitization process, that the Deed [of Trust] has thereby been rendered void and unenforceable").

Second, Plaintiffs argue that MERS had no authority under the deed of trust and thus lacks authority to assign any rights therein or to participate in the foreclosure process. The assertion that MERS' involvement somehow voids deeds of trust and any assignments thereof has been squarely rejected in North Carolina. *See id.*, 2012 U.S. Dist. LEXIS 187282, at *45 n.24 (noting "courts have held that MERS is lawful and accordingly has the authority to assign its rights under deeds of trust and has standing to participate in the foreclosure process" and collecting cases).[13]

**A. Lack of Standing/Wrongful Disclosure (Count One)**

Plaintiffs allege Defendants lack standing to foreclose on the property because they "have failed to perfect any security interest" in the property. A claim for wrongful foreclosure is "based on fraud" and "accrues when the mortgagee conveys the property to a third party." *Porterfield v. JP Morgan Chase Bank*, No. 4:13-CV-00128-BO, 2013 U.S. Dist. LEXIS 152318, at *5 (E.D.N.C. Oct. 22, 2013); *accord Steele*, 2014 U.S. Dist. LEXIS 104142, at *8 (citing

[13] Moreover, Plaintiffs lack standing to challenge the validity of any such assignment. "An action to declare an assignment void could only be brought by someone who can demonstrate a concrete and particularized injury in fact that is fairly traceable to the challenged assignment." *Ward v. Sec. Atl. Mortg. Elec. Registration Sys.*, 858 F. Supp. 2d 561, 568 (E.D.N.C. 2012).

*Patterson v. DAC Corp. of N. C.*, 66 N.C. App. 110, 310 S.E.2d 783, 785 (1984)). Plaintiffs appear to claim fraud through securitization. As explained above, the securitization of a loan does not void the deed of trust. Also, Plaintiffs have not alleged that the property was conveyed to a third party. Accordingly, Plaintiffs' lack of standing/wrongful foreclosure claim is dismissed with prejudice.

**B. Fraud (Counts Two and Three)**

The essential elements of fraud are: (1) "[f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Porterfield*, 2013 U.S. Dist. LEXIS 152318, at *6 (quoting *Forbis v. Neal*, 361 N.C. 519, 649 S.E.2d 382, 387 (2007)). Like Plaintiffs' wrongful disclosure claim, the fraud claims are based on the two erroneous premises discussed above.[14] Accordingly, Plaintiffs' fraud claims are dismissed with prejudice.

**C. Intentional Infliction of Emotional Distress (Count Four)**

In North Carolina, to state a IIED claim, a plaintiff must allege "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." *Holleman v. Aiken*, 193 N.C. App. 484, 501, 668 S.E.2d 579, 590 (2008). IIED claims require a showing of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Guthrie v. Conroy*, 152 N.C. App. 15, 22, 567 S.E.2d 403, 408-09 (2002). Plaintiffs have alleged no facts regarding securitization of the loan or assignment of the deeds of trust would constitute extreme and outrageous conduct." Rather, the claim is merely a recitation

---

14 Even if Plaintiffs' fraud claims were based on sufficient factual premise, Plaintiffs fail to plead their fraud claims with the requisite particularity. FED. R. CIV. P. 9(b). In particular, Plaintiffs do not allege the time or place of the concealment or omission nor do they allege specific acts with respect to each defendant.

of legal conclusions devoid of a factual basis. Plaintiffs' IIED claim (count four) is dismissed with prejudice.

**D. Quiet Title (Count Five)**

Plaintiffs' claim to quiet title, like their other state law claims, is based on the two erroneous premises discussed above. Plaintiffs have not alleged that any encumbrance other than deeds of trust they executed is being asserted against the property. Moreover, Plaintiffs do not dispute that they are in default under the notes. "Because plaintiff has not alleged any facts providing a basis for removing the deed of trust as an encumbrance on his property, where it is undisputed that he defaulted on his mortgage loan, and because defendants are not presently asserting any other encumbrance adverse to plaintiff, there is no basis for a quiet title claim." *Joy v. MERSCORP, Inc.*, 935 F. Supp. 2d 848, 867 (E.D.N.C. 2013). Accordingly, Plaintiffs' quiet title claim is dismissed with prejudice.

## V. CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1. The motions to dismiss by the BANA Defendants [DE 16], Hutchens Law Firm [DE 25] and BSI Financial Services, Inc. [DE 28] are ALLOWED IN PART and DENIED IN PART as follows:

    a. Counts one through five (state law claims) are DISMISSED WITH PREJUDICE as to all defendants;

    b. Count seven (TILA and HOEPA) is DISMISSED WITH PREJUDICE as to MERS and DISMISSED WITHOUT PREJUDICE as to all other defendants; and

    c. Count eight (RESPA) is DISMISSED WITHOUT PREJUDICE as to all defendants.

2. Plaintiffs may file an amended complaint within twenty-one (21) days of this Order; and

3. The amended complaint, if any, must (i) properly identify the BANA Defendants in the case caption, (ii) provide specific factual allegations in support of the TILA, HOEPA and RESPA claims and the equitable tolling thereof; and (iii) exclude any allegations,

discussion or insinuations regarding the securitization of loans, the separation of a deed of trust from the promissory notes, or the lawfulness of MERS.

SO ORDERED.

This the 25th day of January, 2017.

**JAMES C. FOX**
Senior United States District Judge