IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-660-BR

MARK T. STEPHENS and WENDY S. )
ELLIOTT f/k/a WENDY S. STEPHENS, )
)
Plaintiffs, )
) **ORDER**
v. )
)
BANK OF AMERICA HOME LOANS, )
INC. (formerly COUNTRYWIDE HOME )
LOANS, INC.), BANK OF NEW YORK )
MELLON AS TRUSTEE, MORTGAGE )
ELECTRONIC REGISTRATION )
SYSTEMS, INC., BSI FINANCIAL )
SERVICES and HUTCHENS LAW FIRM, )
)
Defendants. )
_____ )

On 7 July 2016, plaintiffs, proceeding *pro se*, initiated this action alleging federal and state law claims based on the foreclosure of their home following default of their mortgage obligations. (DE # 1.) Subsequently, Bank of America, N.A. ("BANA"), Countrywide Home Loans, Inc. ("Countrywide") (collectively, the "BANA defendants"), Hutchens Law Firm ("Hutchens"), and BSI Financial Services, Inc. ("BSI"), among others, filed motions to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. (DE ## 16, 25, 28.) On 25 January 2017, Senior United States District Judge James C. Fox dismissed plaintiffs' original complaint pursuant to Rule 12(b)(6) with leave to amend certain federal claims only ("January Order"). (DE # 34.) On 15 February 2017, plaintiffs filed an amended complaint against the BANA defendants and BSI. (DE # 35.) This matter is now before the court on the motions to dismiss of the BANA defendants, (DE # 36), and Hutchens and BSI, (DE

# 38), and plaintiffs' opposition thereto, (DE # 42). Also before the court is plaintiffs' "supplemental pleading," defendants' responses, and plaintiffs' reply. (DE ## 43, 44-46.)

## I. BACKGROUND

The second amended complaint sets forth no factual allegations with limited exceptions. Accordingly, the court identifies the relevant facts gathered from documents attached to the motions to dismiss and which are matters of public record or otherwise integral to the amended complaint. (See January Order, DE # 34, at 2 n.2 (identifying documents court may consider in ruling on a motion to dismiss).)

This matter concerns alleged federal law violations associated with two mortgage loans – the first consummated in 2005 and the second in 2006 – both of which were secured by a deed of trust on 998 West Durness Court, Wake Forest, North Carolina ("the property"). (BANA Defs.' Mem., Exs. B, D, DE ## 37-2, 37-4.)

On 10 August 2005, plaintiff Ms. Elliot executed a promissory note evidencing a loan in the amount of $154,800.00 for the benefit of Countrywide Bank, a Division of Treasury Bank, N.A. ("the priority loan"), which was secured by a deed of trust signed by both plaintiffs on the property listing Mortgage Electronic Registration Services, Inc. ("MERS") as nominee for the lender and the lender's successors and assigns. (Id., Ex. B, DE # 37-2.) That deed of trust subsequently underwent two assignments. In particular, MERS assigned it to Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP, which in turn assigned it to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust as Trustee for Ventures Trust 2013-I-H-R. (Id., Ex. C, DE # 37-3.)

On 10 March 2006, plaintiffs executed a home equity line of credit ("HELOC") promissory note in the amount of $20,423.00 for the benefit of Countrywide secured by a deed of

trust on the property, listing MERS as nominee for the lender and the lender's successors and assigns. (Id., Ex. D, DE # 37-4.) In September 2015, MERS assigned the HELOC deed of trust to Bank of New York Mellon f/k/a the Bank of New York, as successor trustee to JP Mortgage Chase Bank, N.A., as trustee on behalf of the certificate holders of the CWHEQ Inc., CWHEQ Revolving Home Equity Loan Trust, Series 2006-E. (Id., Ex. E, DE # 37-5.)

On an unspecified date, MS. Elliott defaulted on the priority loan. Subsequently, Hutchens, on behalf of BSI, sent Ms. Elliot a pre-foreclosure notice dated 20 April 2016. (Hutchens & BSI's Mem., Ex. G, DE # 39-7.) At the time, the total amount past due on the priority loan was $12,264.20. (Id.) The pre-foreclosure notice advised Ms. Elliot of the required process in order to cure her default and avoid foreclosure. (Id.) The amended complaint is silent as to the status of the HELOC and the foreclosure proceeding.

## I. STANDARD OF REVIEW

In order to defeat defendants' motions to dismiss, the amended complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions, recitations of the elements of a cause of action, and bare assertions devoid of further factual enhancement do not constitute well-pled facts for motion to dismiss purposes. See Iqbal, 556 U.S. at 678. While the court must liberally construe a *pro se* plaintiff's pleadings, Erickson v. Pardus, 551 U.S. 89, 94 (2007), it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011).

## II. DISCUSSION

A.   **TILA and RESPA Claims**

In the January Order, Judge Fox dismissed without prejudice plaintiffs' Truth in Lending Act ("TILA") and Real Estate Settlement Procedures Act ("RESPA") claims against the original defendants and permitted plaintiffs to file an amended complaint, instructing them to (1) "provide specific factual allegations in support of the TILA [ ] and RESPA claims and the equitable tolling thereof;" and (2) "exclude any allegations, discussion or insinuations regarding the securitization of loans, the separation of a deed of trust from the promissory notes, or the lawfulness of MERS."[1]  (DE # 34, at 16-17.)  Plaintiffs' amended complaint wholly fails to comply with these directives.  Moreover, plaintiffs' "supplemental pleading" is an attempt to circumvent the January Order's directive to exclude any discussion related to the loan securitization process and contains irrelevant matter.

In their amended complaint, without any specific supporting factual allegations, plaintiffs assert that the BANA defendants and BSI failed to provide a good faith estimate and "a notice of Right To Obtain Written Itemization" in violation of TILA.[2]  (Am. Compl., DE # 35, at 2.)  At the outset, the court notes that once again, plaintiffs fail to provide any allegations that give rise to the plausible inference that BSI is a "creditor" or "assignee" within the meaning of TILA.

---

[1] Judge Fox also dismissed without prejudice plaintiffs' claim under the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639.   The amended complaint does not include a HOEPA claim.
[2] Although plaintiffs refer to both RESPA and TILA in their amended complaint, the only statutory provisions which they claim defendants violated are under TILA.  (See DE # 35, at 2-3.)  Therefore, the court confines its discussion to the purported TILA violations.  However, even assuming the amended complaint could be construed to allege violations of RESPA, the court notes that while RESPA does require certain disclosures at or before settlement, including a good faith estimate, 12 U.S.C. § 2604(c), "[c]ourts have uniformly held that there is no private right of action for failure to provide a good faith estimate at closing as required by 12 U.S.C. § 2604(c)," Streza v. Bank of Am., No. 3:13-CV-573, 2014 WL 3810363, at *8 (E.D. Va. Aug. 1, 2014) (citing cases); see also Shahin v. PNC Bank, 625 F. App'x 68, 71 (3d Cir. 2015); Collins v. FMHA–USDA, 105 F.3d 1366, 1368 (11th Cir. 1997) (per curiam).  Moreover, even if such a private right of action existed, as discussed *infra*, plaintiffs fail to establish that equitable tolling applies, and any RESPA claim is time barred, (see January Order, DE # 34, at 13 n.12 (noting the applicable statute of limitations)).

4

(See January Order, DE # 34, at 6-7.) Indeed, there are no allegations that suggest BSI was a party to the priority loan or HELOC transactions. Accordingly, plaintiffs fail to state a TILA claim against BSI.

The court now turns to the allegations against the BANA defendants. The purpose of TILA is to promote the "informed use of credit" by requiring "a meaningful disclosure of credit terms." 15 U.S.C. § 1601(a). For fixed-term credit transactions, including residential mortgage transactions, certain disclosures must be made before credit is extended or the transaction consummated. Those disclosures include a good faith estimate of the charges that borrowers are likely to incur in connection with the settlement of their mortgage, 15 U.S.C. § 1638(b)(2), and provide "a statement of the consumer's right to obtain, upon a written request, a written itemization of the amount financed," 15 U.S.C. § 1638(a)(2)(B). A lender's failure to provide the disclosures is an actionable violation. See 15 U.S.C. § 1640(a).

As recognized previously, plaintiffs have failed to provide specific factual allegations in support of their TILA claims. Even assuming that they had, the statute of limitations bars such claims unless the doctrine of equitable tolling applies. (January Order, DE # 34, at 9-12.) Plaintiffs maintain that equitable tolling applies to their claims because

> the failure to provide these disclosures effectively concealed the lack of disclosures. Plaintiffs discovered [the TILA] violations only after Bank of America sent Plaintiffs a Notice of Intent to Accelerate on July 16, 2015, and Plaintiffs were forced to research options to save their home. Plaintiffs have spent many hours trying to discover these violations of law. This is outside the normal understanding of due diligence.

(Am. Compl., DE # 35, at 3.) "To invoke [the fraudulent concealment] doctrine as a basis for equitable tolling, a plaintiff must allege '(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence.'"

5

(January Order, DE # 34, at 10 (quoting <u>Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.</u>, 71 F.3d 119, 122 (4th Cir. 1995).)  Again, plaintiffs do not allege, nor is there any indication, that the BANA defendants took any action fraudulently to conceal the alleged failure to make any required TILA disclosures.  Moreover, plaintiffs' reliance on their research conducted following receipt of BANA's 2016 letter does not satisfy the "due diligence" requirement.  To the contrary, this assertion indicates that plaintiffs possessed the means of discovering the TILA violations within the one year statute of limitations had they exercised due diligence.  <u>See</u> 15 U.S.C. § 1640(e).  Thus, plaintiffs' TILA claims against the BANA defendants are time-barred.

**B.     Plaintiffs' New Claims**

In their amended complaint. plaintiffs also attempt to bring the following additional claims for: (1) "predatory lending," (2) "violations of NC Usury Law," (3) violation of the Electronic Signatures in Global and National Commerce Act ("E-Sign Act"), 15 U.S.C. §§ 7001-7006, (4) violation of North Carolina's Uniform Electronic Transaction Act ("UETA"), N.C. Gen. Stat. §§ 66-311 to -330; (5) "invalid deed of trust;" and (6) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1.  (DE # 35, at 3–4.)  While the January Order did not allow for the addition of new claims, the court nevertheless briefly considers these claims.

Plaintiff's "predatory lending" claim is based on defendants' imposition of "unfair and abusive loan terms" on plaintiffs.  (<u>Id.</u> at 3.)  In support of this claim, plaintiffs allege that defendants violated the "general rule" that a borrower can only "qualify for a loan at 2 – 2.5 times her gross income" and that "[n]egative amortization is generally considered to be predatory in nature."  (<u>Id</u>. at 3-4.)  The court is unaware of a stand-alone "predatory lending" claim under

6

federal or North Carolina law. See, e.g., Johnson v. J.P. Morgan Chase Nat'l Corp. Servs., Inc., No. 3:13-CV-678-MOC-DSC, 2014 WL 4384023, at *5 (W.D.N.C. Aug. 5, 2014) (memorandum and recommendation) ("Plaintiff cites no authority establishing the existence of [a predatory lending] claim and the Court is aware of none."), adopted, 2014 WL 4384024 (W.D.N.C. Sept. 3, 2014). Moreover, even if the court interprets the amended complaint as alleging a claim for fraud based on predatory lending practices, plaintiffs present no allegations in support of this claim. Plaintiffs' use of the label "predatory lending" and their vague allegations of "unfair and abusive" lending practices are insufficient to state a fraud claim. (See January Order, DE # 34, at 15 (providing elements of fraud).)

Plaintiffs next aver that defendants violated North Carolina's usury statutes, see N.C. Gen. Stat. §§ 24-1 et seq., suggesting defendants made them pay "interest on interest." (Am. Compl., DE # 35, at 4.) The elements of a usury claim are: (1) "a loan or forbearance of the collection of money;" (2) "an understanding that the money owed will be paid;" (3) "payment or an agreement to pay interest at a rate greater than allowed by law;" and (4) "the lender's corrupt intent to receive more in interest than the legal rate permits for use of the money loaned." Gilbert v. Residential Funding LLC, 678 F.3d 271, 279 (4th Cir. 2012) (quoting Swindell v. Fed. Nat'l Mortg. Ass'n, 409 S.E.2d 892, 895 (N.C. 1991)). Plaintiffs fail to allege any facts in support of this claim.

Plaintiffs next assert claims for violations of the E-Sign Act and UETA for defendants' purported "[f]ailure to obtain Plaintiffs' consent under E-sign" and "by using MERS, a private data base not accessible to the Plaintiffs." (Am. Compl., DE # 35, at 4.) The E-Sign Act gives legal validity to electronic records and signatures for transactions in or affecting interstate or foreign commerce. 15 U.S.C. § 7001(a). The court in Levy-Tatum v. Navient & Sallie Mae

Bank, No. CV 15-3794, 2016 WL 75231 (E.D. Pa. Jan. 7, 2016), recently considered whether the E-Sign Act creates a private right of action. In finding that it did not, the Levy-Tatum court observed that the E-Sign Act

> contains no rights-creating language and manifests no intent to create either a private right or remedy. The E-Sign Act simply establishes that contracts and signatures cannot be denied legal effect merely because they are in electronic form. The E-Sign Act does include requirements for obtaining consent from consumers before using electronic records. See 15 U.S.C. § 7001(c)(1)(C)(ii). But nothing in the statute suggests that this is a private right much less that there is some private remedy, especially since the statute expressly states that failure to obtain electronic consent from a consumer is not itself fatal to a contract's validity or enforceability. 15 U.S.C. § 7001(c)(3).

Id. at *5 (footnote omitted). The court finds persuasive this analysis and also concludes that the E-Sign Act does not create a private right or remedy. Accordingly, plaintiffs fail to state a claim under the E-Sign Act.

North Carolina's UETA, while broader in scope than the E-Sign Act, also validates the use of electronic records and signatures and includes requirements for obtaining a consumer's consent to electronic records. N.C. Gen. Stat. § 66-327(c); cf. 15 U.S.C. § 7001(c). Unlike the E-Sign Act, however, UETA does not include a provision addressing the effect of a failure to obtain a consumer's electronic consent. Compare N.C. Gen. Stat. § 66-327(c) with 15 U.S.C. § 7001(c)(3). Nevertheless, like the E-Sign Act, no provision within UETA either explicitly or implicitly supports any legislative intent to create a private cause of action. Accordingly, plaintiffs fail to state a claim under UETA.

Plaintiffs claim that the deed of trust associated with the priority loan is invalid because the deed of trust is "an altered document under N.C. Gen. Stat. §§14-119 (c)(1)" and because its first assignment "is a forgery under N.C. Gen. Stat. §§14-122." (Am. Compl., DE # 35, at 5.) The allegations underlying this claim are baseless. Moreover, as stated in the January Order,

8

plaintiffs lack standing to challenge the assignment. (DE # 34, at 7 n.8.)

Finally, plaintiffs assert a claim under UDTPA. Plaintiffs allege no facts in support of this claim, citing only defendants' alleged "TILA violations, predatory lending practices, Usury violations, E-sign and UETA violations, and forgery of the DEED OF TRUST and ASSIGNMENT OF DEED OF TRUST." (Am. Compl., DE # 35, at 5.) Plaintiffs' claim is simply a conclusory recitation of the elements of a UDTPA claim. Accordingly, plaintiffs fail to state a claim under UDTPA.

## I. CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1. The motions to dismiss by the BANA Defendants (DE # 36) and Hutchens Law Firm and BSI Financial Services, Inc. (DE # 38) are ALLOWED;

2. Plaintiff's federal and state law claims are DISMISSED WITH PREJUDICE; and

3. The clerk is DIRECTED to enter judgment and close the case.

This 28 September 2017.

_____
W. Earl Britt
Senior U.S. District Judge